154 So. 561

## TERVIN et al. v. CORDOVA STATE BANK.

### 6 Div. 474.

Supreme Court of Alabama.

March 29, 1934.

Rehearing Denied May 24, 1934.

Arthur Fite and L. D. Gray, both of Jasper, for appellants.

Coleman D. Shepherd, of Jasper, for appellee.

FOSTER, Justice.

The bill in this case was filed to reform and foreclose a mortgage.

The respondents by answer allege the invalidity of the mortgage, and hence contend that the court will not reform or foreclose it, because the acknowledgments were taken before the cashier of the bank, which is the mortgagee. This contention can only be made by direct attack, and if we assume that the answer, not made a cross-bill praying for such relief is in this suit a direct attack (Jenkins v. Jonas Schwab Co., 138 Ala. 664, 35 So. 649), it is not available to respondents, because it is not the homestead of a married man as mortgagor. While the acknowledgment as such may be ineffectual, the signature of the officer is an attestation. Such an instrument requires only one attesting witness, since the mortgagors wrote their own signatures. Section 6838, Code. The mortgage was executed with sufficient formality to be effectual at law as well as in equity. Maddox v. Wood, 151 Ala. 157, 43 So. 968; Spink v. Guar. Bk. & Tr. Co., 181 Ala. 272, 61 So. 302.

There are two important questions of fact which control the result in this case. The first is whether the parties to the mortgage mutually agreed that a certain storehouse and lot, known and described as lot number 4, block 37, should be included in the mortgage, and that it was by mistake erroneously described as being in block 65, instead of 37. If that is found to be the situation, then it becomes important, second, whether the mortgage, which was made later to Maude Henderson on that lot, was executed in good faith and for value, without notice of the equity of the first mortgagee by reason of the error in the description.

The mortgage to complainant, as recorded two days after its execution, contained lot 4, block 65. That lot was across the street from the one in block 37, and was owned by another party. The mortgagors did own a storehouse on the same street where they did business, lot 4, block 37, and owned no other storehouse. They claimed that no such store was agreed or intended to be included in the mortgage, and that the lot 4, block 65, was added after its execution, and without their consent. In other words, was

a forgery, and on that claim have pleaded non est factum. But we think they cannot be sustained in that contention from the evidence. If there was intended to be inserted a storehouse and lot, the natural inference is that they intended to include the only one they owned, and not one owned by another. Such was the effect of the positive evidence for complainant, though denied by defendants. We think the court reached the conclusion supported by the weight of the evidence in that respect.

■ There is much about the consideration of the mortgage to Miss Maude Henderson, which is so unusual as to justify the court in declining to give full faith and credit to it. She saved money to a large extent from small earnings, about $2,000, kept in cash in her trunk. She advanced the amount in cash, and there is no circumstance to corroborate such an unusual state of facts, but the circumstances discredit her contention. She gives no corroborating evidence of the receipt of $1,700, and more from the administration of her mother's estate, when there must be in existence records which would corroborate her. She hoarded that amount and more in cash, with no bank checks to show its ownership or advance to the Tervins, and no identifying record of any disposition they made of it after they received it. She was a member of the household and intimate friend of the Tervins. The mortgage was not made when the alleged advance occurred, but on the eve of the maturity of complainant's mortgage.

When such burden is upon litigants, they cannot expect the courts to accept such unusual statements as the true situation, when uncorroborated by authentic records. They undoubtedly had available some kind of permanent record of such transaction, if it occurred. The Tervins, though merchants and claimed to have used the money in that business, introduced in evidence no book accounts of the transactions kept in the usual course, and did not claim that any were kept, nor other record made. Williams v. Riddlesperger, 227 Ala. 113, 148 So. 803; Thompson v. Tower Mfg. Co., 104 Ala. 140, 16 So. 116.

We agree with the findings and decree of the circuit court in equity, and it is affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.